**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

**RITE AID OF NEW YORK, INC.**                          :
                                                        :
          **Petitioner/Cross-Respondent,**     :        Civil No. 1:12-mc-55-P1
                                                        :
   **-v-**                                            :
                                                        :
                                                        :
**EQUAL EMPLOYMENT OPPORTUNITY**                        :
**COMMISSION**                                          :
                                                        :
        **Respondent/Cross-Movant**            :
-------------------------------------------------------------x

### EEOC'S MEMORANDUM OF LAW IN OPPOSITION TO RITE AID'S PETITION TO QUASH AND IN SUPPORT OF EEOC'S CROSS-MOTION TO ENFORCE THE SUBPOENA

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION


Nora E. Curtin
Supervisory Trial Attorney
33 Whitehall Street, 5th Floor
New York, New York 10004
Telephone: (212) 336-3747
Facsimile: (212) 336-3623
nora.curtin@eeoc.gov


Andrew M. Schnitzel
Trial Attorney
Telephone: (212) 336-3666
andrew.schnitzel@eeoc.gov

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................1

Factual Background ................................................................................................2

Argument ................................................................................................6

    I.     Rite Aid Failed to Exhaust Its Administrative Remedies So Its Petition Must Be Denied and the Subpoena Enforced ................................................6

    II.    The Court Must Enforce EEOC's Subpoena Because It Seeks Information Relevant to EEOC's Investigation of Corchado's Charge of Discrimination ..7

         A.    The Standard of Review in Subpoena Enforcement Actions Is Extremely Limited ................................................................................7

         B.    The Evidence EEOC Seeks Is Relevant to EEOC's Investigation of Alleged Unlawful Employment Practices at Rite Aid ..........................8

                1.    Courts Have Recognized a Broad Standard of Relevance Applicable to EEOC Investigations/Subpoenas ......................10

                2.    EEOC's Subpoena Seeks Information Necessary to Investigate Allegations Against Rite Aid ..................................11

                3.    Sears Is Factually Distinguishable and Is Contrary to the Second Circuit's Decision in UPS ................................13

    III.   Rite Aid Cannot Show That Compliance With the Subpoena Would Be Unduly Burdensome ................................................................................14

Conclusion ................................................................................................15

## PRELIMINARY STATEMENT

Equal Employment Opportunity Commission (EEOC) opposes Rite Aid of New York, Inc.'s (Rite Aid of NY) Petition to Quash and cross-moves this Court to enforce EEOC's administrative subpoena.  EEOC is currently investigating a charge of race, color, and national origin discrimination filed against Rite Aid Drug Palace, Inc.[1] and other entities under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII).  In the course of its investigation of Rite Aid's policy of conducting criminal background checks and making employment decisions based on its employees' and applicants' criminal history, EEOC issued a subpoena seeking information related to that investigation.  To date, Rite Aid has refused to produce the requested information.

Rite Aid of NY filed a petition to quash the subpoena, which should be denied because Rite Aid failed to comply with proper procedures for challenging an administrative subpoena. However, in the interest of judicial economy EEOC has cross-moved this Court for enforcement of the subpoena so that the substantive issues may be addressed in this proceeding. As discussed below, under 42 U.S.C. § 2000e-9 (incorporating 29 U.S.C. § 161) and 29 C.F.R. § 1601.16(b)(1), a recipient of an EEOC subpoena who does not intend to comply must petition EEOC to revoke or modify the subpoena within five days of service of the subpoena.  Since Rite Aid failed to avail itself of this procedure it cannot successfully do so now.  Normally the next step in the process would be for EEOC to file an Order to Show Cause why its subpoena should not be enforced (EEOC Subpoena Enforcement action).  While EEOC contends Rite Aid's petition to this court is improper and should be denied, it raises issues normally addressed in an EEOC Subpoena Enforcement action, therefore EEOC has cross-moved for enforcement of the

---

[1] Rite Aid Drug Palace, Inc. (Rite Aid) is located at Rite Aid's corporate headquarters in Camp Hill, Pennsylvania.

subpoena.  EEOC's Cross-Motion here will eliminate unnecessary delay and the need for a subsequent proceeding.

     As described more fully below, this Court should grant EEOC's motion and enforce the subpoena because the information sought is relevant, and Rite Aid has no valid reason to avoid complying with the subpoena.

**FACTUAL BACKGROUND**

     Christian Corchado initially filed a Charge of Discrimination with EEOC on October 29, 2008 alleging that Rite Aid discriminated against him on the basis of race, color, and national origin when it fired him pursuant to its "blanket policy against employing people with criminal records."  (Declaration of John E. Thompson dated March 19, 2012 ("Thompson Decl.") ¶ 4, Ex. 1 (Charge of Discrimination).)  Corchado, a Latino man, further alleged that Rite Aid's criminal conviction policy has a disparate impact on Latinos, including himself, in violation of Title VII.  (*Id.*)[2]

     Corchado alleges that when he was hired in February 2007 as a stockperson at an Eckerd Drug Store in Brooklyn, he disclosed his prior criminal conviction in his application and during his interview.  (*Id.*)  Rite Aid bought Eckerd in June 2007 and became Corchado's employer. (*Id.*)  Corchado states that he continued to work as a stockperson until he was told that he would be promoted to shift supervisor around January 3, 2008.  (*Id.*)  Rite Aid had ChoicePoint[3] run a background check on Corchado that included his criminal history.  (*Id.*)  This background check identified Corchado's 2003 felony drug conviction, which he had previously disclosed in his application to Eckerd.  (Thompson Decl. ¶ 4.)  Corchado alleges that Rite Aid's District Manager, Steve Suarez, told him that Rite Aid company policy forced Suarez to fire him because

---

[2] Corchado uses both "Latino" and "Hispanic" in his filings with EEOC.
[3] Choicepoint is now known as LexisNexis Screening Solutions Inc.

of his criminal history.  (Ex. 1 (Charge of Discrimination) at ¶ 15.)  EEOC sent Rite Aid notice

of the charge and began to investigate whether Title VII had been violated.  (Thompson Decl. ¶

4, Ex. 2 (Notice of Charge).)

On June 2, 2009, Rite Aid submitted a position statement denying discrimination, but

admitting that it conducted a background check that revealed Corchado's prior criminal

conviction, and admitting that he was fired because of that conviction.  (Thompson Decl. ¶ 4, Ex.

3 (Rite Aid Position Statement dated June 2, 2009).)  Rite Aid represented that it has no specific

written policy concerning the use of prior criminal convictions and that it allows decisions to be

made at the discretion of the hiring manager in the stores.  (*Id.* at 2.)  Rite Aid also submitted its

employee handbook entitled "An Associate Atlas"; the cover of that handbook bears the Rite Aid

corporate logo, not Rite Aid of New York, Inc.'s.  (Thompson Decl. ¶ 4, Ex. 4 (Employee

Handbook) at cover page.)  The handbook is issued by Rite Aid's Human Resources Department

located in Harrisburg, Pennsylvania.  (*Id.* at 2 (no page number on document).)  The handbook

includes a section entitled "Background Checks" that states "Rite Aid may conduct background

checks on its applicants in compliance with its applicant screening procedures.  This applies to

applicants who are previous associates who are reapplying, as well as applicants who would be

new to the company."  (*Id.* at 12.)

EEOC requested that Rite Aid provide its policies on the collection and use of criminal

histories, validation studies supporting the use of criminal history in making employment

decisions, and information about the computer systems it uses to store employee data.

(Thompson Decl. ¶ 4, Ex. 5 (EEOC Request for Information (RFI) dated March 3, 2010).)  Rite

Aid provided a partial response to EEOC's request, which included the following two

statements:

> 7.   At the store level, *all employees are screened and undergo a background check*.  The positions, at the store level, for which background information is used are Manager, Assistant Manager, Shift Supervisor, Loss Prevention Agent, Cashier and Pharmacist.
>
> 8.   There were no written policies in place regarding how criminal background information is used as a criterion for the selection or termination of applicants.  However, if an applicant's criminal background check reveals a past criminal conviction, *the selection and/or termination of the applicant is within the discretion of the hiring manager*. A decision would be made, on a case by case basis, based on the position applied for; the position's relation to the past criminal offence and whether such offense which would ultimately have an adverse affect on Rite Aid in running its business.

(Thompson Decl. ¶ 4, Ex. 6 (Rite Aid Response dated April 27, 2010) (emphasis added).)  Rite Aid further admitted that it was not in possession of any validation studies or validation evidence pertaining to or supporting its use of criminal background information as a factor in selection or termination of job applicants or employees.  (*Id.*)  Rite Aid identified its personnel computer system, Infinium, and the company it uses for criminal background checks, LexisNexis Screening Solutions Inc. formerly ChoicePoint, but failed to provide any detail about computer systems used.  (*Id.*)

Corchado filed an Amended Charge of Discrimination on November 3, 2010, which contained additional factual allegations regarding his individual termination and the following allegation: "I contend that Rite Aid has a policy or practice of not employing persons based on their criminal records.  Through this policy, Rite Aid discriminates against me and other similarly situated persons based on race because the policy has a disparate impact on African-Americans, Hispanics, and Native Americans."  (Thompson Decl. ¶ 4, Ex. 7 (Amended Charge).)[4]  EEOC sent Rite Aid notice of the amended charge and requested a supplemental

---

[4]  Corchado's amended charge incorrectly cites an EEOC Regulation applicable to the Federal Sector (i.e. federal government employees) that does not apply to private employees.  *See* 29 C.F.R. § 1614.204 (regarding class complaints).  This provision has no bearing on EEOC's investigative power and no relevance to the appropriate scope of this investigation.

– 4 –

position statement, which Rite Aid submitted.  (Thompson Decl. ¶ 4, Ex. 8 (Notice of Amended

Charge); Thompson Decl. ¶ 4, Ex. 9 (Rite Aid Second Position Statement dated January 5,

2011).)

EEOC then requested information regarding hourly retail associates[5] employed at any

time from January 1, 2005 to present and criminal background check data on those employees.

(Thompson Decl. ¶ 4, Ex. 10 (EEOC RFI dated April 6, 2011).)  EEOC identified specific fields

in the Infinium program that would aid in EEOC's investigation.  (*Id.*)  EEOC also requested a

"Manager's Guide" policy manual referenced in Rite Aid's employee handbook.  (*Id.*)  Even

though the information requested was limited to retail associates and not applicants or all

positions impacted by Rite Aid's policy, Rite Aid refused to comply with EEOC's request.

(Thompson Decl. ¶ 4, Ex. 11 (Letter from Rite Aid to EEOC dated May 5, 2011).)

EEOC's Investigator followed up by letter to clarify EEOC's requests and offer Rite Aid

assistance in complying with the request.  (Thompson Decl. ¶ 4, Ex. 12 (Letter from Carlo to

Rite Aid dated May 25, 2011).)  EEOC offered to arrange a teleconference between IT

representatives or make an on-site visit to assess Rite Aid's databases.  (*Id.*)  Rite Aid failed to

respond and did not respond to a follow-up voice mail message EEOC left on July 13, 2011.

(Thompson Decl. ¶ 4.)

Because EEOC's efforts to obtain the necessary information had been unsuccessful, on

January 5, 2011, EEOC served the subpoena at issue here on Rite Aid's President and Chief

Executive Officer at corporate headquarters in Pennsylvania.  (Thompson Decl. ¶ 4, Ex. 13

(Subpoena No. NY-A12-003).)  In summary, the subpoena requested the following:

---

[5]  Rite Aid uses the term "hourly store associates" to include four positions: cashier, shift
supervisor, pharmacy technician, and pharmacy cashier.  *See* Rite Aid's Website, "Career
Opportunities," available at http://www.riteaid.com/careers/hourly_store_assoc.jsf (last visited
Mar. 12, 2012).

I.  The "Policies & Procedures Manual, A Manager's Guide to Company Practices and Associate Relations" and "any additional internal documentation which would inform management's decisions regarding results of an employee's criminal background check."

II.  Two types of electronic data for all individuals employed as Hourly Retail Associates from January 1, 2005 to present: (1) biographical and employment data exported from Rite Aid's Infinium HRIS system; and (2) criminal background check data exported from Rite Aid's computer system containing LexisNexis Screening Solutions's (formerly ChoicePoint) information.

(*Id.*)  As in EEOC's previous request, EEOC tailored its automated data requests as closely as possible to Rite Aid's computer system.  Rite Aid failed to respond by the January 20, 2012 return date or contact EEOC for an extension of time to respond.  (Thompson Decl. ¶ 4.) EEOC's Investigator left a message for Rite Aid's counsel on January 27, 2012 inquiring about its failure to respond.  (*Id.*)  Rite Aid's counsel returned the Investigator's call on January 29, 2012, and left a message stating that she would call her client and get back to EEOC.  (*Id.*)  The Investigator again called Rite Aid's counsel on February 16, 2012 and left a message seeking a response.  (*Id.*)  On March 5, 2012, EEOC's Buffalo Local Office received a hand-delivered copy of Rite Aid's Petition to Quash that was filed in this Court on February 23, 2012.  (*Id.*) Rite Aid never petitioned EEOC to revoke or modify Subpoena NY-A12-003.  (*Id.*)

At no time prior to the filing of this petition to quash, did Rite Aid respond to EEOC solely in the name of or on behalf of Rite Aid of New York.  (*Id.*)  Rite Aid did state that it was a national retail chain incorporated in each state as a wholly owned subsidiary of Rite Aid Corporation. (Thompson Decl. ¶ 4, Ex. 3, PS at 2.)

## ARGUMENT

**I.    Rite Aid Failed to Exhaust Its Administrative Remedies So Its Petition Must Be Denied and the Subpoena Enforced.**

Rite Aid failed to challenge EEOC's subpoena properly so its petition must fail.  Pursuant to 42 U.S.C. § 2000e-9 (incorporating 29 U.S.C. § 161) and 29 C.F.R. § 1601.16(b)(1), a

recipient of an EEOC subpoena who does not intend to comply must petition EEOC to revoke or

modify the subpoena within five days of service of the subpoena. "A party's failure to attempt

this administrative appeal procedure prevents the party from challenging the subpoena, except on

constitutional grounds." *EEOC v. County of Hennepin*, 623 F. Supp. 29, 31-32 (D. Minn. 1985);

*see also EEOC v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062, 1063-64 (5th Cir. 1979); *EEOC v.

Roadway Express, Inc.*, 569 F. Supp. 1526, 1528-29 (N.D. Ind. 1983).

Rite Aid did not petition EEOC to revoke or modify the subpoena within five days, as

required by the statute and the related regulations. Indeed, Rite Aid has never so petitioned or

contacted EEOC at all. (Thompson Decl. ¶ 4.) Instead, more than 40 days after being served

with the subpoena, Rite Aid inappropriately petitioned this Court under Federal Rule of Civil

Procedure 45(c)(3) to quash this administrative subpoena. *See* ECF No. 2 at 2-3. Consequently,

all of Rite Aid's objections to enforcement of the subpoena, other than constitutional objections,

should not be heard and the petition should be denied. Because Rite Aid does not, and cannot,

raise any constitutional objections, the subpoena must be enforced.

## II.    The Court Must Enforce EEOC's Subpoena Because It Seeks Information Relevant to EEOC's Investigation of Corchado's Charge of Discrimination.

### A.    *The Standard of Review in Subpoena Enforcement Actions Is Extremely Limited.*

EEOC is required to investigate a charge of employment discrimination to determine

whether there is reasonable cause to believe that an employer has engaged in an unlawful

employment practice. *See* 42 U.S.C. § 2000e-5(b); *Univ. of Pa. v. EEOC*, 493 U.S. 182, 190

(1990) ("The Act obligates the Commission to investigate a charge of discrimination . . . ."). In

doing so, EEOC is entitled to "any evidence of any person being investigated . . . that relates to

unlawful employment practices covered by [Title VII] and is relevant to the charge under

investigation." 42 U.S.C. §2000e-8(a). EEOC may issue subpoenas to obtain that evidence. *See*

42 U.S.C. § 2000e-9.

As the Second Circuit has stated, "the district court's 'role in a proceeding to enforce an administrative subpoena is extremely limited.'" *EEOC v. UPS*, 587 F.3d 136, 139 (2d Cir. 2009) (per curiam) (quoting *NLRB v. Am. Med. Response, Inc.*, 438 F.3d 188, 192 (2d Cir. 2006)). The Supreme Court has counseled, "judicial review of the early stages of an administrative inquiry results in 'interference with the proper functioning of the agency' and 'delay[s] resolution of the ultimate question whether the Act was violated.'" *EEOC v Shell Oil Co.*, 466 U.S 54, 81 n.38 (1984) (quoting *FTC v. Standard Oil*, 449 U.S. 232, 241-43 (1980)).

To obtain enforcement of an administrative subpoena, EEOC need only show that: (1) the investigation is being conducted for a legitimate purpose; (2) the inquiry is relevant to the purpose; (3) the information sought is not already in EEOC's possession; and (4) EEOC has followed the required administrative steps. *UPS*, 587 F.3d at 139 (citing *Am. Med. Response*, 438 F.3d at 192). Rite Aid does not challenge the first, third or fourth elements; it challenges only the relevance and breadth of the subpoena, and asserts indefiniteness but without any elaboration. *See* ECF No. 2 at 3 ¶ 6.

A subpoena that satisfies the four criteria "will be enforced unless the party opposing the enforcement demonstrates that the subpoena is unreasonable or that compliance would be 'unnecessarily burdensome.'" *UPS*, 587 F.3d at 139 (quoting *Am. Med. Response*, 438 F.3d at 193). Because EEOC seeks relevant information directly related to its investigation of a validly filed charge and Rite Aid cannot demonstrate that the subpoena is unreasonable or that compliance would be unnecessarily burdensome, the Court must enforce the subpoena.

### B. The Evidence EEOC Seeks Is Relevant to EEOC's Investigation of Alleged Unlawful Employment Practices at Rite Aid.

Corchado's original charge alleged not only that Rite Aid discriminated against him on

the basis of his race, color and national origin but also that Rite Aid has a blanket policy of excluding individuals with criminal conviction, which has a disparate impact on Latinos. (Thompson Decl. ¶ 4, Ex. 1.)  Corchado amended his charge and alleged that Rite Aid's policy of not employing individuals with criminal convictions has a disparate impact on African Americans and Native Americans in addition to Hispanics.  (Thompson Decl. ¶ 4, Ex. 7.) Contrary to Rite Aid of NY's assertions, Corchado's charge explicitly makes a class allegation. Both the original and amended charge contain allegations beyond Corchado's individual termination and EEOC is empowered, even mandated, to investigate those claims.  *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 365 (4th Cir. 1976) (ignoring possible discrimination would be a violation of EEOC's statutory obligation in the area of employment discrimination).

Rite Aid of NY mistakenly asserts that Corchado was required to allege he witnessed others' discrimination for his charge to contain a true class allegation.  *See* ECF No. 2 at 6 ¶ 11. However, even if Corchado has not identified a single other victim, EEOC is now aware that Rite Aid maintains a nationwide practice of using criminal histories in its employment decisions and EEOC is authorized to investigate that practice.  Even if Corchado's charge was deemed to contain only an individual claim, EEOC would be permitted to expand its inquiry.  *See, e.g.*, *EEOC v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 995 (D. Minn. 2010) (charging party amended original charge to include class allegation, but nonetheless the court noted that "even if the original charge were to govern the court's relevance inquiry the information EEOC seeks in the subpoena would be relevant"); *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994) (investigation of a failure to promote charge by one woman revealed the scarcity of women in a particular grade which led to EEOC's permissible expanded subpoena).

1.      **Courts Have Recognized a Broad Standard of Relevance Applicable to EEOC Investigations/Subpoenas.**

The information EEOC seeks in its subpoena meets the broad standards for relevancy applicable during an EEOC investigation.  *See* 42 U.S.C. § 2000e-8.  The Supreme Court has stated that, "[s]ince the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer."  *Shell Oil*, 466 U.S. at 68-69 (citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 814-15 (1984) for adoption of comparably expansive relevance standard in analogous context of IRS subpoena); *see also EEOC v. Morgan Stanley & Co. Inc.*, No. M18-304, 1999 U.S. Dist. LEXIS 14661, at *6 (S.D.N.Y. Sept. 22, 1999) (information sought in subpoena may "cast light" on charging party's allegations of discrimination as well as the existence of the class wide discrimination described in her charge).  In fact, EEOC has the power to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."  *EEOC v. Kidder Peabody & Co. Inc.*, No. M18-304, 1992 U.S. Dist. LEXIS 3939, at *6 (S.D.N.Y. April 2, 1992).  Relying on Supreme Court precedent, the Second Circuit has made it clear that "it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired."  *UPS*, 587 F.3d at 139 (quoting *Shell Oil*, 466 U.S. at 68-69).  Throughout its petition Rite Aid fails to cite to controlling Second Circuit case law or address Supreme Court case law requiring the use of a broad definition of relevance in EEOC investigations.  Rite Aid seeks relief that is inconsistent with this authority.

Rite Aid of NY also argues that EEOC's subpoena is overly broad because EEOC has not yet found Corchado or others have been victims of discrimination.  *See* ECF No.

2 at 7-8 ¶¶ 12, 13.  This defies logic and law.  Before investigating, EEOC does not need

to make an initial showing of "some merit," *EEOC v. Franklin & Marshall Coll.*,

775 F.2d 110, 115-16 (3d Cir. 1985), or a *prima facie* showing of discrimination, *UPS*,

587 F.3d at 140, or show that the charge is "well founded" or "verifiable" or has "some

basis in fact," *Shell Oil*, 466 U.S. at 60, 71-72 & n.26, 75-77; *see also Schwan's Home

Serv.*, 644 F.3d at 747 ("a charge is valid regardless of the strength of its evidentiary

foundation").  EEOC has properly requested the information so it may make a

determination on whether discrimination has occurred.

### 2. EEOC's Subpoena Seeks Information Necessary to Investigate Allegations Against Rite Aid.

Rite Aid does not argue, and indeed there can be no question, that Part I of the subpoena

seeking the "Manager's Guide" and other documents, "which would inform management's

decisions regarding results of an employee's criminal background check" are relevant to the

allegations against Rite Aid.  (Thompson Decl. ¶ 4, Ex. 13 (Subpoena No. NY-A12-003).)

Similarly, Part II of the subpoena must be enforced because EEOC properly requested

nationwide data related to the application of Rite Aid's company-wide criminal history policy.

In a similar situation the Second Circuit reversed a district court's denial of EEOC's

motion to enforce a nationwide subpoena on grounds that the district court applied too restrictive

a standard of relevance.  *EEOC v. UPS*, 587 F.3d 136.  There, in connection with EEOC's

investigation of two charges of discrimination, EEOC served a subpoena seeking nationwide

information regarding religious exemptions to UPS's Appearance Guidelines.  The Second

Circuit found that the subpoena sought relevant information because EEOC is not limited to

obtaining information only related to individual allegations, particularly where the UPS

Appearance Guidelines applied to every UPS facility in the country.  *Id.* at 139.  The district

court had concluded that EEOC's investigation should be confined to the two facilities where the charging parties applied for employment or worked.  The Second Circuit reversed, ruling that the EEOC's subpoena could properly seek nationwide data related to the application of the policy. *Id*.

Other courts have allowed EEOC to obtain nationwide data to investigate an employer's company-wide policy.  In *EEOC v. Kronos* the Third Circuit held that the district court misapplied the relevance standard when it limited EEOC's subpoena to West Virginia, finding that "[a]n employer's nationwide use of a practice under investigation supports a subpoena for nationwide data on that practice."  620 F.3d at 298 (citing *UPS*, 587 F.3d at 139).  Likewise in *EEOC v. Sterling Jewelers, Inc.*, No. 11-cv-28, 2011 WL 5282622, at *3-*5 (W.D.N.Y. Nov. 2, 2011), the court enforced EEOC's subpoena for company-wide information regarding employee discipline pursuant to policy based on individual charge.

Here EEOC's subpoena seeks information about the application of a company-wide policy.  Information obtained during EEOC's investigation showed that: (1) Rite Aid terminated Corchado because of the results of his criminal background check; (2) Corchado alleged that district manager Suarez told him that "company policy forced him to fire" Corchado; (3) Rite Aid runs criminal background checks on all applicants and every employee at the store level; (4) Rite Aid uses the results of the background check to make employment decisions, including decisions to hire or fire; (5) Rite Aid has no written policies or procedures controlling how its managers use criminal histories to make employment decisions; and (6) Rite Aid has no validation evidence supporting its use of criminal history information.  (Thompson Decl. ¶4, Exs. 1, 3, 4, 6, 7, 9.)

Although Rite Aid has disclosed it conducts background check on all applicants and

employees and uses background information for Manager, Assistant Manager, Shift Supervisor, Loss Prevention Agent, Cashier and Pharmacist positions, (*id.*), EEOC significantly limited its requests to retail associates employed from January 2005 to the present.

EEOC's subpoena seeks information necessary to determine whether Rite Aid's policy of using criminal history information results in an unlawful disparate impact on the basis of race or national origin in violation of Title VII. The information sought is relevant to that inquiry and well within EEOC's authority under Title VII. As in *UPS*, EEOC is entitled to obtain the requested nationwide information concerning the enforcement of a company-wide policy.

**3.   *Sears* Is Factually Distinguishable and Is Contrary to the Second Circuit's Decision in *UPS*.**

In support of its petition, Rite Aid relies heavily on a decision from the District Court for the District of Colorado, *EEOC v. Sears, Roebuck & Co.*, No. 10-288, 2010 WL 2692169 (D. Colo. June 8, 2010). *Sears* should be disregarded as a factually distinguishable case that is contrary to the Second Circuit's opinion in *UPS*.

In *Sears* the court determined that the charge was an individual charge that did not include an allegation that other employees were harmed by the company's policy. *Id.* at *5. Corchado, by contrast, alleged in his original and amended charge that Rite Aid has a policy of not employing individuals based on their criminal records. (Thompson Decl. ¶ 4, Exs. 1, 7.) Therefore, as discussed above, Corchado's charge was not limited to his individual claim.

The court in *Sears* limited that subpoena's geographic scope to an area surrounding the location where charging party worked. *Sears*, 2010 WL 2692169, at *7. However, as described above, the Second Circuit in *UPS* reversed the district court's decision to limit the subpoena's scope to two facilities because UPS applied the policy at issue at all of its facilities. *UPS*, 587 F.3d at 139. This Court should similarly reject any proposal to limit the geographic scope of this

valid subpoena.

### III.   Rite Aid Cannot Show That Compliance With the Subpoena Would Be Unduly Burdensome.

Because the subpoena seeks relevant information, the Court must enforce it unless Rite Aid shows that compliance "threatens to unduly disrupt or seriously hinder [its] normal operations . . . ." *FTC v. Rockefeller*, 591 F.2d 182, 190 (2d Cir. 1979).  Furthermore, "[a] court will not excuse compliance with a subpoena for relevant information simply upon the cry of unduly burdensome." *EEOC v. Citicorp Diners Club, Inc.*, 985 F. 2d 1036, 1040 (10th Cir. 1993).  Rite Aid has not argued that the subpoena is unduly burdensome; indeed, it cannot offer any evidence sufficient to make such a showing since the subpoena is specifically tailored to Rite Aid's systems and EEOC has repeatedly offered its technical assistance to help Rite Aid comply.

### CONCLUSION

Rite Aid failed to comply with proper procedures for challenging an administrative subpoena so its petition must be denied.  While investigating a validly filed charge of employment discrimination, EEOC sought information from Rite Aid that is directly relevant to the allegations of discrimination.  Because EEOC seeks information relevant to its investigation of a validly filed charge of employment discrimination, and because Rite Aid cannot show that compliance would be unduly burdensome, this Court must enforce the subpoena.

Dated: New York, NY
   March 19, 2012          Respectfully Submitted,

                    EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

                    ELIZABETH GROSSMAN
                    Regional Attorney

                     /s/ Nora E. Curtin
                    NORA E. CURTIN
                    Supervisory Trial Attorney

  /s/ Andrew M. Schnitzel
ANDREW M. SCHNITZEL
*Admitted Pro Hac Vice*
Trial Attorney
andrew.schnitzel@eeoc.gov

33 Whitehall Street, 5th Floor
New York, NY 10004
Telephone: (212) 336-3666
Facsimile: (212) 336-3623